UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

NOT FOR PUBLICATION

|  |  |
|---|---|
| JAMES BURT,<br><br>     Plaintiff,<br><br>v.<br><br>KEY TRADING LLC, *et al.*,<br><br><br>     Defendants. | Civil Action No.<br><br>12-6333(KM-SCM)<br><br><br>**OPINION AND ORDER ON**<br>**PLAINTIFF'S MOTION FOR LEAVE**<br>**TO AMEND**<br><br>**[D.E. 152]** |

I.   **INTRODUCTION**

    This matter comes before the Court on Plaintiff's Motion for Leave to File Third Amended Complaint ("Motion to Amend"). (ECF Docket Entry ("D.E.") 152). Plaintiff seeks to amend his complaint to add a fraudulent conveyance count against defendant, Catherine Larkin and additional allegations to support his fraudulent conveyance claims against defendant, Alyssa Cohen. Plaintiff alleges the fraudulent conveyance causes of action under the New Jersey Uniform Fraudulent Transfer Act ("NJUFTA"), *N.J.S.A.* § 25:2-20 *et seq*. The Court has considered the briefs filed in support and opposition[1] of Plaintiff's Motion, as well as the arguments raised at its

---

[1] Defendant Larkin filed a brief opposing the Motion to Amend.  (D.E. 159). Defendant Cohen did not file any opposition brief.

October 21, 2014 hearing. For the following reasons, the Court GRANTS Plaintiff's Motion to Amend.

## II. BACKGROUND

### A. Procedural History

This matter involves a breach of a settlement agreement between Plaintiff and defendants, Key Trading, Rafael deNoyo, David Sullivan, and Peter Larkin. According to the Complaint, in 2005 and 2006, Plaintiff invested a total of two million dollars with Key Trading under false representations from deNoyo,[2] Sullivan, and Larkin that Plaintiff would receive monthly returns on his investment. *See* Complaint at ¶¶16-18 (D.E. 1). The two million dollars Plaintiff invested was not returned to him and he did not receive any return on his investment. *Id*. at ¶¶19-20. Plaintiff demanded restitution, and entered into a settlement agreement with Key Trading, deNoyo, Sullivan, and Larkin (hereinafter the "Settlement Defendants") in or about September of 2010. *Id*. at ¶¶21-22. Pursuant to the 2010 Settlement Agreement, the Settlement Defendants agreed to compensate Plaintiff with approximately $1.9 million, paid in

---

[2] The Court notes that the capitalization of the name, "deNoyo," is inconsistent in the parties' pleadings. While Plaintiff capitalized the name in the Complaint (D.E. 1), Defendants have used both "deNoyo" and "DeNoyo." *See*, *e.g.*, D.E. 30 and D.E. 30-1. Because Defendant deNoyo did not capitalize his last name in his Answer (D.E. 30), the Court uses "deNoyo."

monthly payments, and to pay Plaintiff certain amounts received by Key Trading from a bankruptcy proceeding.[3]  *Id*. at ¶¶21-23.

Plaintiff commenced the instant action in October of 2012. (D.E. 1).  In the original complaint, Plaintiff asserted that the Settlement Defendants breached the 2010 Settlement Agreement by failing to make the monthly payments.  *Id*. at ¶37.  Plaintiff further claimed that the Settlement Defendants breached the implied covenant of good faith and fair dealing by withholding amounts they received from the bankruptcy proceeding and by hiding their financial assets, all the while claiming to be unable to meet their financial obligations.  *Id.* at ¶¶39-46. Plaintiff further asserted claims against Christine deNoyo, Alyssa Cohen, and Catherine Larkin, the wives of Defendants deNoyo, Sullivan, and Larkin, respectively, for imposition of a constructive trust and disgorgement of funds provided to them by their husbands.  *See* Complaint, at Counts III, IV, and V (D.E. 1).

In October of 2013, the parties settled this action, placing the terms of the settlement on the record before this Court, and memorializing the terms in a written agreement (hereinafter "October 2013 Settlement Agreement").  *See* Transcript of October 18, 2013 Hearing (D.E. 93).  Pursuant to

---

[3] The bankruptcy proceeding was *In re Refco, Inc.*, No. 05-60006 (RDD) in the U.S. Bankruptcy Court – Southern District of New York.

the October 2013 Settlement Agreement, Defendants Christine deNoyo, Alyssa Cohen, and Catherine Larkin would be released from the action once the Settlement Defendants completed all their payments. *Id.* Furthermore, Plaintiff would be entitled to a final judgment should the Settlement Defendants default and fail to cure the default. *See* Letter for Attorney Anzola (D.E. 98).

On January 10, 2014, Plaintiff requested that the Court enter a Final Judgment against the Settlement Defendants, who defaulted on their obligations. *Id.* Because the case had been administratively terminated due to settlement (D.E. 97), Plaintiff moved to reopen the case, seeking an entry of final judgment against the Settlement Defendants and reinstatement of the case so that he could prosecute claims against Christine deNoyo, Alyssa Cohen, and Catherine Larkin. *See* Plaintiff's Motion to Re-open Case, dated February 6, 2014 (D.E. 100-1).

On May 13, 2014, the Court reinstated the case and reinstated the Amended Complaint[4] (D.E. 95) on the condition that Plaintiff file a Second Amended Complaint that conformed with the Settlement Agreement as set forth on the record. *See* Order (D.E. 104). The Second Amended Complaint would clarify that Plaintiff was only asserting causes of action against Christine

---

[4] The Court withdrew its order granting Plaintiff leave to file its Amended Complaint in light of the October 2013 Settlement Agreement. *See* Text Order, dated October 25, 2013 (D.E. 96).

4

deNoyo,[5] Alyssa Cohen, and Catherine Larkin, in light of the default judgment against the Settlement Defendants. *See* Transcript of May 6, 2014 Status Conference, at 11 (D.E. 111). On June 16, 2014, the Court entered Final Judgment of $1.8 million against the Settlement Defendants jointly and severally. *See* Final Judgment (D.E. 122).

On July 1, 2014, Plaintiff filed his Second Amended Complaint (D.E. 126). The Second Amended Complaint is the operative complaint and includes a fraudulent conveyance count against Alyssa Cohen. It further includes counts of imposition of a constructive trust and disgorgement of funds against Alyssa Cohen and Catherine Larkin. *See* Second Amended Complaint (D.E. 126). On July 15, 2014, Catherine Larkin filed a Motion to Dismiss Plaintiff's Second Amended Complaint. (D.E. 131). On July 23, 2014, Alyssa Cohen filed an Answer. (D.E. 136).

On August 19, 2014, Plaintiff filed his Motion for Leave to File Third Amended Complaint (D.E. 152). Plaintiff seeks to amend his pleading to add a fraudulent transfer count against Catherine Larkin and additional allegations to support his fraudulent transfer count against Alyssa Cohen. *See* Redlined

---

[5] Plaintiff did not pursue an action against Christine deNoyo in his Second Amended Complaint; nor did he seek to add deNoyo as a defendant in the proposed third amended complaint.

Proposed Third Amended Complaint[6] (hereinafter "Proposed Amended Complaint") (D.E. 160-1).    Plaintiff pleads the fraudulent conveyance counts pursuant to the New Jersey Uniform Fraudulent Transfer Act.  *See id.*  On September 22, 2014, Defendant Larkin filed a brief opposing the Motion to Amend, on the grounds that the amendment would be futile.  *See* Def.'s Opp'n Br. at 6-7 (D.E. 159).  Defendant Cohen did not file any opposition.

### B.    <u>Proposed Amended Complaint</u>

#### 1.    **Additional Allegations as to Catherine Larkin**

Plaintiff seeks to amend the complaint to add the following allegations to support a fraudulent conveyance count against Catherine Larkin:[7]  As recently as July 11, 2014, Mr. and Mrs. Larkin obtained a Judgment of Divorce that included a 55/45 split in the proceeds from the sale of the marital home.  *See* Proposed Amended Complaint at ¶¶47-48 (D.E. 160-1).    Mr. Larkin's portion of the proceeds from the sale of the marital home would be 45%, so long as he was not in arrears in his obligation to pay child support.  *Id.* at ¶47.  According to the terms of the Judgment of Divorce, if Mr. Larkin was "late as

---

[6] This version of Plaintiff's proposed amended complaint illustrates Plaintiff's proposed changes, *i.e.*, the proposed additions and deletions from the operative Second Amended Complaint.

[7] Because the Court did not consider allegations made "upon information and belief" in deciding this motion, the Court does not reference those allegations, *i.e.*, ¶¶50 and 51, in this section of the Opinion.

much as one day, then his entitlement to the proceeds is terminated and he forfeits his rights to his share of the 45% of the net proceeds." *Id.* at ¶48.

Mr. and Mrs. Larkin sold their marital home just twelve days after the Judgment of Divorce was entered. *Id.* at ¶49. Both Mr. and Mrs. Larkin knew at the time the Judgment of Divorce was entered, and on the date their marital home was sold, that Mr. Larkin was several months in arrears on his child support obligations. *Id.* Thus, the Larkins' 55/45 split pursuant to the Judgment of Divorce "was a sham and was a façade behind which Larkin sought to avoid having to receive any share of the profits from his marital home—profits he would have then been required to use to pay his judgment to Plaintiff." *Id.* In addition, both Mr. and Mrs. Larkin actively concealed from Plaintiff the date on which their marital home would be sold in an effort to further divest Plaintiff of his right and ability to attach Mr. Larkin's assets in satisfaction of the Final Judgment. *Id.* at ¶52.

### 2. Additional Allegations as to Alyssa Cohen

Plaintiff proposes to add the following allegations to support his fraudulent conveyance count against Alyssa Cohen:[8] Under the auspices of an October 2011 Separation Agreement,

---

[8] Because the Court did not consider allegations made "upon information and belief" in deciding this motion, the Court does not discuss paragraph 43, which was alleged upon information and belief.

David Sullivan and Alyssa Cohen constructed a fraudulent asset transfer whereby Sullivan transferred large sums of money to Cohen to avoid repaying any funds to Plaintiff. *Id.* at ¶39. Shortly after they entered the Separation Agreement, the Settlement Defendants halted their money payments to Plaintiff under the September 2010 Settlement Agreement. *Id.* Even though Mr. Sullivan's adjusted gross income would put him well below the federal poverty guidelines, the Separation Agreement provided that Sullivan would waive his claim for an equitable distribution of their marital property, thereby providing Alyssa Cohen with a lump sum payment of $300,000. *Id.* at ¶41. In exchange, Sullivan would no longer have to make ongoing child support payments of $106.25 per month. *Id.* Within a few days of executing the Separation Agreement, Sullivan delivered the $300,000 payment to Alyssa Cohen. *Id.* Plaintiff alleges that the monies sent to Alyssa Cohen can be traced back to Key Trading and the funds it wrongfully misappropriated from Plaintiff. *Id.* at ¶44.

III. **DISCUSSION AND ANALYSIS**

    A.   **Legal Standard**

        1.   **Motion to Amend**

Federal Rule of Civil Procedure 15(a) governs requests for leave to amend, allowing an amendment either through the court's

leave or the opposing party's written consent.  The decision to grant or deny leave to amend under Rule 15(a) is "committed to the sound discretion of the district court." *Arab African Int'l Bank v. Epstein*, 10 F.3d 168, 174 (3d Cir. 1993).  Under the liberal rule, the Court must "freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  This ensures that "a particular claim will be decided on the merits rather than on technicalities." *Dole v. Arco Chem. Co.*, 921 F.2d 484, 487 (3d Cir. 1990) (internal citations omitted).  In the absence of unfair prejudice, futility of amendment, undue delay, bad faith, or dilatory motive, the court must grant a request for leave to amend. *Grayson v. Mayview State Hosp.*, 292 F.3d 103, 108 (3d Cir. 2002).  "[G]iven the liberal standard for the amendment of pleadings, courts place a heavy burden on opponents who wish to declare a proposed amendment futile." *See Brant Screen Craft, Inc. v. Watermarc Graphics, Inc.*, No. 10-3843(DMC), 2012 WL 2522972, at *2 (D.N.J. June 28, 2012) (internal citations omitted).

"In assessing 'futility' the District Court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." *U.S. Fire Ins. Co. v. Kelman Bottles*, 538 F. App'x. 175, 184 (3d Cir. 2013) (internal citations and quotations omitted).  Under this standard, a complaint "merely has to state a plausible claim for relief," as the pleading standard "is not

akin to a probability requirement." *Covington v. International Association of AP-Proved Basketball Officials, et al.*, 710 F.3d 114, 118 (3d Cir. 2013) (citing *Iqbal v. Twombly*, 556 U.S. 662, 678-79 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n. 3 (3d Cir. 2014) (internal citations and quotations omitted).

"[T]he District Court determines futility by taking all pleaded allegations as true and viewing them in a light most favorable to the plaintiff." Great *Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 175 (3d Cir. 2010) (internal citations and quotations omitted). If the complaint, as amended, fails to state a claim upon which relief could be granted, then the amendment is futile. *See id.* In determining whether a proposed amendment is futile, "the court looks only to the pleadings." *Pharmaceutical Sales & Consulting Corp. v. J.W.S. Delavau Co.*, 106 F.Supp. 2d 761, 765 (D.N.J. 2000). "If a proposed amendment is not *clearly* futile, then denial of leave to amend is improper." *See Brant Screen Craft, Inc.*, 2012 WL 2522972, at *2 (internal citations and quotations omitted) (emphasis in original).

## 2.    Pleading Fraudulent Conveyance

Rule 9(b) applies to fraudulent transfer claims under the New Jersey Uniform Fraudulent Transfer Act ("NJUFTA"), *N.J.S.A.* §25:2-20 *et seq.* *MSKP Oak Grove, LLC v. Venuto et al.*, 875 F. Supp. 2d 426, 434 (D.N.J. 2012). To determine whether it would be futile to allege fraudulent transfer, the Court looks to whether the proposed claims are pled with enough particularity to satisfy the requirements of Fed. R. Civ. P. 9(b). *See Brant Screen Craft, Inc.*, 2012 WL 2522972, at *3; Fed. R. Civ. P. 9(b) (requiring a party to "state with particularity the circumstances constituting fraud or mistake."). Under Rule 9(b), a plaintiff must plead the circumstances of the alleged fraud with sufficient particularity to place the defendants on notice of the "precise misconduct with which they are charged." *Lum v. Bank of America*, 361 F.3d 217, 223-24 (3d Cir. 2004). "To satisfy this standard, the plaintiff must plead or allege the date, time, and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (internal citations omitted).

Two elements must be pled with sufficient particularity to plausibly allege a claim under the NJUFTA: (1) whether the debtor has put some asset beyond the reach of creditors which would have been available to the creditors at some point in time

but for the conveyance; and (2) whether the debtor transferred property with an intent to defraud, delay, or hinder the creditor. *See MSKP Oak Grove, LLC*, 875 F. Supp. 2d at 435.

Courts look to the presence of factors enumerated in *N.J.S.A.* §25:2-26, *a.k.a.* the "badges of fraud," to determine if the "intent" element for a fraudulent conveyance claim has been sufficiently pled. *See id.* These badges of fraud "represent circumstances that so frequently accompany fraudulent transfers that their presence gives rise to an inference of intent." *Pompeo v. Estate of Hudson*, No. 11-cv-06899(SDW)(MCA), 2013 WL 2182304, at *4 (D.N.J. May 20, 2013). The statute provides that, in determining actual intent under the NJUFTA, consideration may be given, among other factors, to whether:

> (1) The transfer or obligation was to an insider;
> (2) The debtor retained possession or control of the property transferred after the transfer;
> (3) The transfer or obligation was disclosed or concealed;
> (4) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
> (5) The transfer was of substantially all the debtor's assets;
> (6) The debtor absconded;
> (7) The debtor removed or concealed assets;
> (8) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

> (9) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
> (10) The transfer occurred shortly before or shortly after a substantial debt was incurred; and
> (11) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

*N.J.S.A.* §25:2-26.

"The proper inquiry is whether the badges of fraud are present, not whether some factors are absent." *See MSKP Oak Grove, LLC*, 875 F. Supp. 2d at 436. "[T]he presence of a single badge of fraud is sufficient to cast suspicion on the transferor's intent." *Id.* at 437 (citing *Gilchinsky v. Nat. Westminster Bank N.J.*, 159 N.J. 463, 477 (1999)). "Although the presence of a single factor, *i.e.*, badge of fraud, may cast suspicion on the transferor's intent, the confluence of several in one transaction generally provides conclusive evidence of an actual intent to defraud." *Id.* at 436 (holding that Plaintiff stated a claim for intentional fraudulent transfer where four badges of fraud were present: the transfer was made to insiders, the transferor received no consideration for the transfer, the transfer was for substantially all of the transferor's assets, and shortly thereafter, the transferor became insolvent).

B.   **Analysis**

In considering Plaintiff's Motion to Amend, the Court addresses only Defendant Catherine Larkin's argument that the proposed amendments would be futile.  Defendant Larkin did not argue in her Opposition brief that the motion to amend should be denied for any reason other than futility.  Defendant, Alyssa Cohen, did not file a brief opposing the Motion to Amend, and her counsel acknowledged at oral argument on October 21, 2014 that the fraudulent conveyance claims were sufficiently pled.

For the reasons set forth below, the Court finds that Plaintiff's proposed fraudulent conveyance claims against Catherine Larkin and Alyssa Cohen are pled with sufficient particularity such that they are not futile.  Because Rule 9(b)'s requirements are satisfied, and because the Court does not find any undue delay, unfair prejudice, bad faith, or dilatory motive, Plaintiff shall be permitted to amend his complaint to add a fraudulent transfer count against Catherine Larkin and additional allegations to support his fraudulent transfer count against Alyssa Cohen.

### 1.   Fraudulent Transfer Count as to Catherine Larkin

Plaintiff pleads with sufficient particularity the circumstances of the alleged fraud.  These circumstances suggest an intent to de-fraud.  Mr. and Mrs. Larkin were married at the

14

time this action commenced; Final Judgment of $1.8 million was entered against Mr. Larkin and the Settlement Defendants on June 16, 2014. Shortly thereafter, on July 11, 2014, Mr. and Mrs. Larkin entered into a Judgment of Divorce in which Mr. Larkin's asset is subject to transfer if his child support payments are in arrears —- a condition Mr. Larkin can control by merely failing to make the payments. Just twelve days after the Judgment of Divorce is entered, Mr. Larkin forfeited his 45% share of the proceeds from the sale of the marital home because he was already in arrears in his child support payments.

In a case alleging similar circumstances, *Cafaro v. HMC*, No. 07-2793(JLL), 2008 WL 4224805 (D.N.J. Sept. 8, 2008), this Court held that the fraudulent transfer claims were sufficiently pled. In *Cafaro*, Plaintiff alleged that Defendant knowingly accepted assets transferred by her husband. *Id*. at *1. The husband transferred his interest in a property to the Defendant wife approximately one month after his hedge fund collapsed, in an attempt to insulate his assets from investor lawsuits. *Id*. The Court held that Plaintiffs pled fraudulent transfer sufficiently, where the transfer did not involve an exchange for a reasonably equivalent value, the transfer was made between husband and wife, and the Complaint provided allegations regarding the individuals involved, assets transferred, and the general time frame of the transfer. *Id*. at *8.

Similarly, Plaintiff in the instant case sufficiently pleads the first element of fraudulent transfer, *i.e.*, that the debtor, or Mr. Larkin, put some assets beyond the reach of creditors, *i.e.*, Plaintiff, which would have been available to Plaintiff at some point in time but for the conveyance. Plaintiff satisfies this element by alleging that Mr. Larkin transferred his share of the proceeds from the sale of the marital home to Mrs. Larkin through a Judgment of Divorce. Had Mr. Larkin's proceeds from the marital home not been subject to a child support condition that effectively made the transfer nearly certain, the monies would have been applied towards the satisfaction of the Final Judgment. Although Mrs. Larkin herself was not the debtor, she received the stolen funds knowing that she did not provide Mr. Larkin a reasonably equivalent value in exchange. *See* Proposed Amended Complaint, at ¶77 (D.E. 160-1).

Plaintiff also pleads the second element of fraudulent transfer with sufficient particularity, *i.e.*, that the debtor transferred property with an intent to defraud, delay, or hinder the creditor. Consequently, several "badges of fraud," indicating intent, are present.

First, the transfer was to an insider. Insiders "stand in close relation to the debtor as to give rise to the inference

16

that they have the ability to influence or control the debtor's action." *Pompeo*, 2013 WL 2182304, at *6 (internal citations and quotations omitted).   Transfers made between husband and wife are "especially suspect." *See Cafaro v. HMC, et al.*, No. 07-2793(JLL), 2008 WL 4224805, at *8 (internal citations omitted). Mrs. Larkin, who had been married to Mr. Larkin at the time this action commenced, was an insider.   Even though she was obtaining a divorce from Mr. Larkin, the parties shared a child who would stand to benefit from the transfer of money.   Had the money not been transferred, it would have been applied towards the satisfaction of Final Judgment, which Mr. Larkin was jointly and severally liable for, when it could have otherwise been applied towards the care of Mr. Larkin's child.

Second, before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.   Mr. Larkin had been sued in this action in October of 2012; the Final Judgment was entered on June 16, 2014; and the transfer of assets occurred with the sale of the home, in July of 2014. Thus, the debtor had been sued before the transfer was made. Because Mr. Larkin had been in arrears in his child support on the day the sale occurred, his 45% share of the proceeds from the sale was immediately forfeited when the home was sold.

Third, the transfer occurred shortly after a substantial debt was incurred. The Final Judgment was a substantial debt amounting to $1.8 million, and pursuant to the Order of Final Judgment, Plaintiff could recover the amount from any defendant jointly and severally. Just twelve days after the Final Judgment was entered, Mr. and Mrs. Larkin effectuated the transfer by selling their marital home.

Fourth, the value of the consideration received by the debtor was not reasonably equivalent to the value of the asset transferred. As with the transferor in *Cafaro*, Mr. Larkin received no consideration for the transfer of his 45% share of the proceeds. *See id.*

Although Defendant argues that Plaintiff's allegations are false, the Court is not to consider the merits of the allegations in determining whether an amendment would be futile.[9] Instead, the Court is to determine futility by taking all pleaded allegations as true and viewing them in a light most favorable to the plaintiff." *Winer Family Trust,* 503 F.3d at 330-31. Furthermore, because the Court is to look only to the pleadings to determine whether a proposed amendment is futile,

---

[9] The Court notes that Defendant points out that at the time the parties negotiated the terms of their divorce, including the provision regarding child support obligations, Mr. Larkin was not in default of his child support obligations. *See* Defendant's Opposition Brief, at 7 (D.E. 159). While such evidence can be considered in a motion for summary judgment, the Court is to take all allegations as true in considering whether the amendment is futile.

the Court is not to consider any evidence that may contradict the truth of the proposed amended allegations in a motion to amend.  *See Pharmaceutical Sales & Consulting Corp. v. J.W.S. Delavau Co.*, 106 F. Supp. 2d 761, 765 (D.N.J. 2000).

Although Defendant argues that the proposed amended allegations are insufficient because they are made upon information and belief, this Court did not consider any allegations made upon information and belief in determining whether to grant the Motion to Amend.  The majority of the proposed additional allegations are not pled upon information and belief.  For example, in the proposed new Fraudulent Transfer count against Catherine Larkin, the only paragraphs that were pled upon information and belief were paragraphs 50[10] and 51.  In paragraph 51, Plaintiff pleads upon information and belief that Catherine Larkin and Mr. Larkin continued to reside together despite their divorce, thereby allowing Mr. Larkin to retain possession or control of the property he purportedly transferred.  This Court did not need to consider proposed paragraphs 50 and 51 in determining whether the Count was pled with sufficient particularity.  The other allegations alone were

---

[10] Paragraph 50 of the Proposed Amended Complaint states: "Upon information and belief, the above-referenced fraudulent transfer relating to the Larkins' marital home divested Plaintiff of at least Seventy Five Thousand Dollars ($75,000) that rightfully should have been delivered to him by Larkin."  See Proposed Amended Complaint at ¶51 (D.E. 160-1).

pled with sufficient particularity to adequately assert a claim
of fraudulent transfer against Catherine Larkin.

### 2. Fraudulent Transfer Count as to Alyssa Cohen

Plaintiff pleads with sufficient particularity the
allegations of fraudulent transfer as to Alyssa Cohen.
Plaintiff pleads with sufficient particularity the first element
of fraudulent transfer, *i.e.*, that the debtor, or Mr. Sullivan,
put some assets beyond the reach of creditors which would have
been available to them at some point in time but for the
conveyance.  In the Proposed Amended Complaint, Plaintiff
alleges that Mr. Sullivan entered into an October 2011
Separation Agreement with Alyssa Cohen that resulted in the
transfer of approximately $300,000 to her.  *See* Proposed Amended
Complaint, at ¶36 (D.E. 160-1).  Mr. Sullivan had made 11 money
transfers to Alyssa Cohen, mostly in the amount of $5,000 to
$6,000 per transfer, from September of 2009 to November of 2010.
*See id.*  Sullivan also made a withdrawal of $95,450 from an
undisclosed bank account in November of 2009.  *Id.* at ¶38.
Plaintiff alleges that Alyssa Cohen received the stolen funds
knowing that she did not provide Mr. Larkin a reasonably
equivalent value in exchange.  *See id.* at ¶66 (D.E. 160-1).  As
Mr. Sullivan was jointly and severally liable to the Final

Judgment, these monies would have been available to Plaintiff but for these transfers.

Plaintiff pleads the second element with sufficient particularity, *i.e.*, that the debtor transferred property with an intent to defraud, delay, or hinder the creditor. Many of the badges of fraud are present. First, the transfer was to an insider. Alyssa Cohen and David Sullivan had been married since May of 2010. *Id.* at ¶4. Although they were married at the time the Settlement Defendants negotiated the September 2010 settlement agreement, in which the Settlement Defendants agreed to compensate Plaintiff with approximately $1.9 million, they separated approximately one year after Sullivan entered the settlement agreement. Their Separation Agreement effectively resulted in the transfer of approximately $300,000 to Alyssa Cohen, *in lieu* of Sullivan making child support payments. Cohen was an insider because not only did she continue to be legally married to Sullivan at the time of separation, but she also shared a child with him. The transfer of this money would allow for the support of their child, rather than be applied towards the satisfaction of Final Judgment.

Second, the transfer was concealed. Sullivan intentionally withheld various money transfers to Alyssa Cohen from disclosure on his personal financial statement that was incorporated into the September 2010 Settlement Agreement. *Id.* at ¶¶31,36. Cohen

did not declare on his tax returns the income from any of the transfers from September 2009 to November 2010, which totaled approximately $58,000. *See id.* at ¶¶36-37.  Furthermore, Sullivan asserted in his financial statement that he had not sold or transferred any assets within the five years before September 1, 2010, an assertion that was false as evidenced by records from JPMorgan Chase Bank, N.A.  *Id.* at ¶¶32,36.

Third, the debtor removed or concealed assets.  Sullivan asserted in his personal financial statement that as of September 1, 2010, he did not own any real estate. Id at 32. However, he and Alyssa Cohen had purchased a house for approximately $650,000 in December 2009, and this holding was not disclosed in Sullivan's financial statement.  *Id.* at 32(a). Sullivan further did not disclose the funds that he used to purchase this residence.  *Id.* at 32(b).

Fourth, before the transfer was made, the debtor had been sued or threatened with suit.  Sullivan made several transfers from September 2009 to November of 2010, during a period in which he was threatened with suit.  Plaintiff had sought restitution and actually settled with Sullivan and the Settlement Defendants in about September of 2010.

Fifth, the value of the consideration received by the debtor was not reasonably equivalent to the value of the asset

transferred or the amount of the obligation incurred.  According to the Separation Agreement, Sullivan would waive his claim for an equitable distribution of their marital property and would provide Alyssa Cohen a lump sum payment of $300,000 in exchange for no longer having to make ongoing child support payments of $106.25 per month, or $1275 per year.  If Sullivan had to pay child support for 17 years, this would amount to a total of $21,675 in payments, if his child support obligation did not increase.  This amount is not reasonably equivalent to the $300,000 that was paid to Alyssa Cohen upon the execution of the Separation Agreement.

Sixth, the transfer occurred shortly before or shortly after a substantial debt was incurred.  Sullivan and the Settlement Defendants had incurred substantial debt pursuant to their Settlement Agreement entered into with Plaintiff in September of 2010.  The transfer of $300,000 was made upon execution of the Separation Agreement in October of 2011.  Although Alyssa Cohen and David Sullivan were married in May of 2010, the Settlement Agreement was entered into in September of 2010, and the transfer was made in October of 2011.

## IV.  CONCLUSION

As discussed at length, *supra*, the proposed pleading states claims upon which relief may be granted.  Therefore, for the

foregoing reasons, and for good cause shown,

IT IS on this 22nd day of October, 2014,

**ORDERED** that Plaintiff's Motion to Amend (D.E. 152) against defendant Larkin is **granted**; and it is further

**ORDERED** that Plaintiff's Motion to Amend (D.E. 152) against defendant Cohen is **granted** as uncontested and on the merits; and it is further

**ORDERED** that Defendant Catherine Larkin's Motion to Dismiss the Second Amended Complaint (D.E. 131) is **terminated** as moot. Plaintiff's Motion to Dismiss Counterclaim of Defendant, Alyssa Cohen (D.E. 149), is also **terminated** as moot; and it is further

**ORDERED** that Plaintiff shall file his Third Amended Complaint within the next seven days. Defendants shall file a responsive pleading within 14 days of the filing of Plaintiff's Third Amended Complaint as required by Fed.R.Civ.P 15(a)(3).



Honorable Steve Mannion, U.S.M.J.
United States District Court,
for the District of New Jersey
phone: 973-645-3827

10/22/2014 12:56:13 PM